United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Rosemarie C. Wade and Christine R. Estep, Plaintiffs | ) ) ) | |
| v. | ) ) ) | Civil Action No. 14-80253-Civ-Scola |
| Town of Jupiter, Frank Kitzerow, Aaron Scanlan, Edward M. DeJesus, and Edwards Air Enterprise, LLC, Defendant | ) ) ) ) ) | |

### Order On Governmental Defendants' Motions To Dismiss

According to Rosemarie Wade and Christine Estep, this civil-rights lawsuit began with a bad breakup. In 2008, Estep and Edward DeJesus began dating. Soon after, Estep began working at DeJesus's air-conditioner company, Edwards Air Enterprise. Then Estep's mother, Rosemarie Wade, joined the company as a bookkeeper and officer manager for Edwards Air Enterprise. By 2012, Estep and DeJesus were engaged to be married. But during the summer of 2012, their relationship came to a bitter end.

Seeking vengeance because of the breakup, DeJesus contacted the Jupiter Police Department in August 2012 and falsely accused Wade and Estep of embezzling money from Edwards Air Enterprise. The Jupiter Police Department deployed Officer Aaron Scanlan to Edwards Air Enterprise to investigate the allegations. According to the Amended Complaint, upon meeting, DeJesus and Scanlan formed a wicked alliance.

In exchange for falsely charging and prosecuting Wade and Estep for embezzlement, DeJesus agreed to hire one of Scanlan's friends to work at Edwards Air Enterprise and also offered "economic benefit[s]" to Scanlan. (Am. Compl. ¶30, ECF No. 20.) To become the sole investigator of these false allegations, Scanlan took advantage of a policy established by the Town of Jupiter and Frank Kitzerow, the Chief of the Town's Police Department. That policy failed to provide any standard to determine if Scanlan was competent to undertake a financial investigation of this nature. It also failed to properly train or supervise Scanlan in carrying out the investigation. In short, the policy "failed to contain any meaningful provision or practice intended to safeguard the constitutionally protected rights of the public" and allowed Scanlan to "conceal the baseless foundation of the investigation." (Am. Compl. ¶39, 41.)

In February 2013, based on Scanlan's false affidavits and fraudulently produced evidence, both Wade and Estep were arrested. Scanlan let DeJesus know when the arrests were going to be made so that DeJesus could be present outside Estep's home to watch his nefarious plan unfold. Although Scanlan presented the case against Wade and Estep to the State Attorney's Office, the criminal charges against Wade and Estep were ultimately dismissed in May 2013.

Of course, this is just one side of this story—Wade and Estep's side. But when "evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). The Town of Jupiter and Kitzerow have both moved to dismiss the claims against them. For the reasons explained below, the Town of Jupiter's motion to dismiss is granted in part and denied in part. Kitzerow's motion to dismiss is denied.

1. **Count 2 (False Arrest against Scanlan and the Town of Jupiter)**

The Town of Jupiter insists that it is immune from this claim because Wade and Estep have alleged that Scanlan was acting outside of the scope of his employment, and that he was acting maliciously and willfully disregarded the rights of Wade and Estep. (Mot. Dismiss 3, ECF No. 23.) Citing Florida Statute Section 768.28(9), the Town of Jupiter argues that it cannot be liable for Scanlan's actions if he was acting outside of the scope of his employment. Wade and Estep explain that they are alleging in the alternative Scanlan's liability to the extent that he was acting outside of this scope of his employment, and the Town of Jupiter's liability to the extent that Scanlan was acting within the scope of his employment.

"A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

Under Florida sovereign-immunity law, a municipality can be held liable for the acts of a police officer (if the officer was acting within the scope of her employment) with no individual liability on the officer. *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996). Or a police officer can be held individually liable (if she was acting outside of the scope of her employment) with no liability on the municipality. *Id.* But a municipality and an individual

police officer cannot both be liable in the same case since the facts giving rise to the liability of one of them would negate liability as to the other. *Id.* Usually the jury settles the issue of whether the municipality or the individual officer is liable by deciding whether the officer acted in bad faith, with a malicious purpose, or with a willful disregard of the plaintiff's rights—in other words, the jury decides whether the officer acted outside of the scope of her employment. *Id.*

In count 2, Wade and Estep have set out a single claim for false arrest. They have alleged liability against Scanlan individually and, alternatively, against the Town of Jupiter. In doing so, they are recognizing the legal reality that they can recover against Scanlan or the Town of Jupiter—but not both. In other words, they are asserting alternative statements in a single claim. This is precisely what Rule 8(d)(2) permits. When a party makes alternative statements, "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Since the complaint alleges that Scanlan was acting within the scope of his employment, the Town of Jupiter cannot invoke sovereign immunity at this time. It is usually the role of a jury to determine whether an officer was within or outside of the scope of his employment; although in "extreme" cases a court may decide the issue at the summary-judgment stage of the case. *McGhee*, 679 So. 2d at 733. The Town of Jupiter has not cited to any caselaw that suggests an alternative reading of Rule 8. The Court will not dismiss Wade and Estep's claim for false arrest (count 2).

### 2. Count 6 (Negligent Supervision against the Town of Jupiter)

"Negligent supervision of an agent has long been recognized as a basis for tort liability in Florida." *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). "Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment."

The Town of Jupiter first argues that "[i]f the Court were to grant the motion to dismiss of Scanlan for failure to state a cause of action, then dismissal of this claim against the Town would be required." (Mot. Dismiss 5, ECF No. 23.) The problem with this argument is that Scanlan has not moved to dismiss the claims against him; he answered the complaint. (*See* Answer, ECF No. 32.) This argument obviously fails.

The Town of Jupiter next argues that "[b]y its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment." (Mot. Dismiss 5, ECF No. 23 (quoting *Watson v. City of Hialeah*, 552 So. 2d 1146, 1149 (Fla. 3d DCA 1989).) The problem with this argument

is that Wade and Estep are asserting a claim of negligent supervision, not negligent retention. The Town of Jupiter's argument is not directed at the specific claim plead by Wade and Estep, and the Town has not presented any argument why the case law cited should apply to negligent supervision claim. This argument also fails.

Next, the Town of Jupiter asserts that it is immune from tort liability in this context under the doctrine of sovereign immunity. The Town reasons that it can only be liable under a negligent-supervision theory if Scanlan is liable for some other tort. (Mot. Dismiss 4–6, ECF No. 23 (citing *Tex. Skaggs, Inc. v. Joannides*, 372 So. 2d 985, 987 (Fla. 2d DCA 1979)).) The Town concludes that since all the claims against Scanlan would necessarily involve a finding of bad faith, malicious purpose, or willful disregard of human rights, that it would be immune from liability by virtue of Florida's sovereign-immunity-waiver statute. (Mot. Dismiss 6, ECF No. 23 (citing Fla. Stat. § 768.28(9)(a)).) This argument fails for two reasons.

First, an employer's liability for negligent supervision is not linked to the wrongdoing of an employee in the sense argued by the Town of Jupiter. It is true, as a matter of logic and common sense, that if an employee has done nothing wrong, the employer cannot be liable for having negligently supervised him or her. This is because if the employee did not harm the plaintiff, then the employer did not breach its duty to supervise the employee. But if an employee is liable for some tort, then it may be that the employer breached its duty to supervise that employee. A municipal employer can be liable even if the employee committed the tort with malice since it is not the employee's conduct that the municipal employer is being held liable for, but rather the conduct of the employee's supervisor. In other words, Florida's sovereign-immunity-waiver statue does not provide sovereign immunity to the municipal employer in this context because it is not the *malicious* action of the employee that is the focus; it is the *negligent* action of that employee's supervisor. *Cf. Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) ("Florida courts have also recognized [the tort of negligent supervision] in cases involving the state or one of its agencies as a defendant.").

Second, even if the Town of Jupiter could claim sovereign immunity based on the nature of the wrongdoing alleged against Scanlan, one of the torts alleged against Scanlan is false arrest. The tort of false arrest is the unlawful, unreasonable, and unwarranted restraint of a person against his or her will. *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003). The Town of Jupiter has not cited to any caselaw for the proposition that the tort of false arrest requires a showing of malicious purpose or willful disregard of human rights. To the contrary, Florida law does not appear to require that the

arresting officer have a malicious purpose or willful disregard of human rights. *Cf. Lester v. City of Tavares*, 603 So. 2d 18 (Fla. 5th DCA 1992) ("There is no sovereign immunity for false arrest.").

The Town of Jupiter's final argument against the negligent-supervision claim is that this tort falls under the discretionary-function exception to Florida's limited waiver of statutory immunity. Wade and Estep respond that "[w]hile perhaps inartfully worded, what Plaintiffs are in fact asserting is not a considered decision and policy governing how to supervise police investigations, which would be discretionary in nature, but rather a practice by default of complete abdication of oversight of investigations." (Resp. 7, ECF No. 40.)

Municipalities within Florida are "generally immune from tort liability" by virtue of sovereign immunity. *Mosby v. Harrell*, 909 So. 2d 323, 326 (Fla. 1st DCA 2005). Although Florida has partially waived this immunity, there are exceptions to the waiver. *Id.* at 326–327. One exception to Florida's waiver of sovereign immunity—known as the discretionary-function exception—specifies that "policy-making, planning, or judgmental governmental functions which are inherent in the act of governing" cannot serve as the basis of governmental tort liability. *Seguine v. City of Miami*, 627 So. 2d 14, 16 (Fla. 3d DCA 1993). "This exception is based on the separation of powers doctrine." *Id.* "On the other hand, governmental acts which attempt to implement policy at the operational level do not fall within this discretionary act exception." *Id.* at 17.

In this case, Wade and Estep challenge the Town of Jupiter's "policy . . . that allowed [Scanlan] to become the sole and/or primary investigator for the criminal investigation of the allegations made by DeJesus and Edwards Air Enterprise." (Am. Compl. ¶35, ECF No. 20.) According to Wade and Estep, the Town's policy allowed Scanlan to "become the final arbiter of the course and scope of the investigation." (*Id.* ¶36.) When pressed, Wade and Estep attempt to clarify the specific conduct that they are complaining about: "[W]hat Plaintiffs are in fact asserting is . . . a practice by default of complete abdication of oversight of investigations." (Resp. 7, ECF No. 40.)

Decisions regarding "the assignment of employees" to carry out the mission of a governmental agency fall under the discretionary-function exception because "the assignment of employees requires the exercise of evaluation, judgment, and expertise on the part of the [supervisors of the governmental agency], who have the duty to assign the employees." *Lee v. Dep't of Health & Rehab. Servs.*, 698 So. 2d 1194, 1199 (Fla. 1997). But an employee's failure to file appropriate reports after witnessing a rule violation or an employee's failure to take the appropriate remedial steps to prevent future rule violations are operational in nature, and do not fall within the

discretionary-function exception. *Id.* Put another way, a challenge to the "implementation or operation" of a municipality's police-training program may be actionable as an operational decision. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001). But a challenge to a municipality's "decision regarding how to train its officers and what subject matter to include in the training" is clearly barred by the discretionary-function exception. *Id.*

Wade and Estep's claim against the Town of Jupiter for negligent supervision is barred under the doctrine of sovereign immunity by virtue of the discretionary-function exception. Their allegations are plainly directed at the reasonableness of the Town's alleged policy of allowing individual officers significant leeway and independence in investigating cases. This is precisely the type of basic policy decision that the discretionary-function exception protects. The Town of Jupiter's decision about how much supervision to employ over officer investigations is akin to the decision in *Lee* about how and where to assign employees to carry out the agency's mission. Both decisions require the exercise of evaluation, judgment, and expertise on the part of the supervisors and Town officials who have the duty of carrying out the particular mission. The Court will dismiss Wade and Estep's claim for negligent supervision (count 6). Since the Court is dismissing this count, it need not address the Town of Jupiter's request to strike the claim for attorneys' fees under this claim.

### 3. Counts 7 & 8 (Section 1983 claims against the Town of Jupiter)

The Town of Jupiter urges the Court to dismiss Wade and Estep's civil-rights claims because they failed to "allege repeated acts of a final policy maker to establish liability under 42 U.S.C. § 1983." (Mot. Dismiss 10, ECF 23.) The Town argues that the "amended complaint contains mere labels and conclusions" and that Wade and Estep "do not allege that [the] Town had a custom or policy of making its police officers arrest individuals without probable cause" or "that [the] Town showed a deliberate indifference to the rights of those with whom its officers interacted." (*Id.* at 10–11.) Wade and Estep respond, explaining that the policy they are challenging is the Town's practice of "allowing any officer, no matter how unskilled, to investigate any case he or she might wish" without any consideration of "the competency of the officer to conduct the investigation properly," and without providing any oversight or supervision of the officer's investigation or actions. (Resp. 7–12, ECF No. 40.) They argue that their pleading is not conclusory; that they have clearly identified "the policy with sufficient specificity to allow the Town to prepare its defense." (*Id.* at 11.) They also point out that, under some circumstances, a municipality may be liable "even for a single incident, where

it maintained a policy, practice, or custom that allowed its police officers to conduct specific investigations with deliberate indifference to whether those officers had the minimal skills to perform the task legally." (*Id.* at 10.)

If a person working for a state or local government violates another's constitutional rights, that person is responsible for any injury caused by the constitutional violation. 42 U.S.C. § 1983. But a municipality cannot be held vicariously liable "for the wrongful actions of its police officers." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "Instead, a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Id.* (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)).

A municipality may be liable under Section 1983 for failing to adequately train its police officers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). But "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983." *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. at 389).

"To establish a deliberate or conscious choice or such deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350 (quotation marks omitted). Usually, a plaintiff must allege and prove a pattern of prior incidents involving similar constitutional violations to put the municipality on notice of a need to train its police officers. *Id.* at 1351–52. But even "a single constitutional violation may result in municipal liability when there is sufficient independent proof that the moving force of the violation was a municipal policy or custom." *Vineyard*, 990 F.2d at 1212; *see also Bruce v. Beary*, 498 F.3d 1232, 1249 (11th Cir. 2007). In the *Vineyard* case, the plaintiff presented evidence that the County had "inadequate policies of supervision, discipline and training of [sheriff] deputies . . . and that these policies demonstrated the deliberate indifference of the County to the rights of arrestees to be free from [constitutional violations at the hands of] the County's deputies." *Vineyard*, 990 F.2d at 1212. Although the plaintiff in the *Vineyard* case did not present evidence of prior similar incidents, *Gold*, 151 F.3d at 1353, he did present evidence that because of the County's decision to not have even the most basic policies in effect to "measure police behavior and to address problems when they arise" that police abuses were certain to occur. *Vineyard*, 990 F.2d at 1213.

In this case, Wade and Estep have alleged that the Town of Jupiter failed to have adequate policies in place to ensure the proper assignment, training, and supervision over its police officers when officers were engaged in criminal investigations. (Am. Compl. ¶¶106–107, 113–114, ECF No. 20.) Wade and Estep have also alleged that the Town was deliberately indifferent to the rights of people who may come into contact with the Town's police officers by failing to have adequate supervision policies in place. In other words, Wade and Estep are complaining that the Town's deficient policies directly led to Scanlan wrongly arresting both of them. These allegations are sufficient to state viable claims against the Town of Jupiter under Section 1983. The allegations here are similar to the claims in *Vineyard*, where the plaintiff claimed that the county had "inadequate policies for training, supervision, and discipline." *Vineyard*, 990 F.2d at 1212. Although it seems unlikely that the Town of Jupiter has "no policies and procedures manual," as was the situation in *Vineyard*, it is not appropriate to dismiss a case just because "actual proof of [a plaintiff's allegations] is improbable . . . [or] that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court will not dismiss Wade and Estep's Section 1983 claims (counts 7 & 8).

### 4. Frank Kitzerow's Motion to Dismiss (Count 9)

Kitzerow asserts that the Court must dismiss Wade and Estep's claim against him because the claim impermissibly seeks to hold him vicariously liable for the actions of Scanlan. (Mot. Dismiss 2–3, ECF No. 24.) He also argues that the claim against him should be dismissed as being duplicative of the claim against the Town of Jupiter because he is being sued in his official capacity. (*Id.* at 5.) Wade and Estep respond that they are not asserting vicarious liability against Kitzerow. Instead, they claim that Kitzerow's decision to establish a policy that allowed the Jupiter Police Department to assign an officer to an investigation without any consideration of the officer's training, experience, or ability caused the harm suffered by Wade and Estep in the form of the violation of their civil rights. (Resp. 4–5, ECF No. 41; Am. Compl. ¶¶119–126, ECF No. 20.)

"It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or *respondeat superior*." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). "[S]upervisors are liable under § 1983 either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Id.* (quotation marks omitted). "This requisite causal connection can be established . . . when a supervisor's improper custom or policy results in

deliberate indifference to constitutional rights." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (quotation marks omitted); *see also Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) ("[L]iability may be imposed due to the existence of an improper policy or from the absence of a policy."). A policymaker's decision to have "inadequate policies" can demonstrate the policymaker's "deliberate indifference" to the constitutional rights of people coming into contact with police officers who are affected by the inadequate policies. *See Vineyard v. Cnty. Of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993). This is because, in some circumstances, it is obvious that not having a certain policy in place will lead to police officers violating people's constitutional rights. *See id.* at 1213; *cf. also Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178, 1189 (11th Cir. 2011) ("In some cases, the need for training is so obvious that deliberate indifference can be established even without an earlier violation or pattern of abuse.").

Wade and Estep allege that Kitzerow was the "final policymaker" with respect to the policy that allowed Scanlan to act as the sole investigator and final arbiter in the investigation that led to their arrests. (Am. Compl. ¶¶120–124.) They assert that Kitzerow's policy "contained no meaningful or effective provision, or guidelines to ensure the competency of Scanlan, or any other officer, to investigate crimes similar to those presented here, and was thus deliberately indifferent to the constitutional rights of the citizens suspected or accused of such crimes." (*Id.* ¶124.) Finally, they allege that Kitzerow's policy regarding the "assignment of the untrained and incompetent Scanlan" as the detective to investigate the allegations against them directly caused the alleged constitutional violations.

The Plaintiffs in this case have sufficiently alleged a claim under Section 1983 against Kitzerow. They are not merely asserting that he is liable because he was Scanlan's supervisor. Instead, they have plainly alleged that there is a causal connection between Kitzerow's actions (creating the allegedly inadequate policy) and the alleged constitutional violation (Scanlan violating their civil rights). At the pleading stage, this is enough. Wade and Estep's allegations that Kitzerow is liable for failing to supervise Scanlan are also viable since Kitzerow may be liable if he knew that Scanlan, as an untrained and unqualified officer, would act unlawfully and failed to stop him from doing so. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010).

Kitzerow's assertion that the claim should be dismissed because it is seeking to hold him liable in his official capacity (*i.e.*, that it is really just another claim against the Town of Jupiter) also fails. Wade and Estep have made clear in their pleading that count 9 is against Kitzerow in his individual

capacity.  This manner of pleading is permissible.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

The final issue Kitzerow raises in his motion to dismiss is the demand for punitive damages.  Specifically, Kitzerow argues that the punitive-damages demand should be dismissed because Wade and Estep do not allege that Kitzerow's conduct was "motivated by evil intent" or involved "callous or reckless indifference to federally protected rights." (Mot. Dismiss 5, ECF No. 24 (quoting *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986)).) But by alleging that Kitzerow was deliberately indifferent to their constitutional rights, Wade and Estep have, in essence, alleged that Kitzerow was recklessly indifferent to their civil rights.  The punitive-damages demand will not be dismissed.

### 5. Conclusion

For the reasons articulated above, the Court **grants in part and denies in part** the Town of Jupiter's Motion to Dismiss (ECF No. 23).  Count 6 of the Plaintiffs' Amended Complaint against the Town of Jupiter for negligent supervision is dismissed with prejudice.  The Court **denies** Frank Kitzerow's Motion to Dismiss (ECF No. 24).  The Town of Jupiter's and Kitzerow's responses to the Amended Complaint are due by December 5, 2014.

**Done and ordered**, in chambers at Miami, Florida, on November 21, 2014.

Robert N. Scola, Jr.
United States District Judge